## THE SOUTH BAY.

(District Court, W. D. Washington, W. D. June 27, 1905.)

### No. 462.

SALVAGE—AMOUNT OF COMPENSATION—TOWING OF DISABLED SCHOONER TO PORT.

> An award of·$2,000 made to the owners and crew of a tug for salvage services performed in towing to a port a steam schooner, worth, with cargo, $50,000, which had been injured when passing out of Gray's Harbor, Wash., by striking the submerged stonework of a government jetty at the entrance of the harbor, and which was disabled and leaking and in actual peril, but not in imminent danger, the service in towing requiring some four or five hours, but without extraordinary peril or hardship.
>
> [Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Salvage, §§ 81, 82.
>
> Salvage awards in federal courts, see The Lamington, 30 C. C. A. 280.]

In Admiralty. Suit by the owner, master and crew of the steam tug Daring to enforce a claim for salvage for the rescue from peril of the steam schooner South Bay. Decree for libelants for the aggregate amount of $2,000.

John C. Hogan, for libelants.
Kerr & McCord, for respondent.

HANFORD, District Judge. The material facts in this case are as follows: At noon on the 24th day of November, 1904, the sailing and auxiliary steam schooner South Bay, of 480 tons burden, with a full cargo of lumber, in going to sea from one of the mills on Gray's Harbor, in this state, struck near the outer end of a jetty constructed by the United States government as a harbor improvement on the south side of the entrance to Gray's Harbor. The draught of the vessel, laden, was 17 feet, and the depth of water at the time and place of the occurrence was proximately 4 fathoms. There was a strong wind at the time, blowing off shore, and the tide had commenced to ebb, or was about on the turn. The vessel struck hard on the submerged stonework composing the jetty, and for a time seemed to be hung fast, but with the assistance of her sails and the swell of the sea she was lifted over the jetty, and was free in sufficient depth of water to float several minutes before the libelants came to her rescue. By her contact with

the jetty portions of her keel were torn off, and her rudder and the supports thereof were broken, and her propeller was disabled, and her hull was damaged so that she was leaking. Without assistance, the schooner would have soon drifted or have been carried by wind and the set of the tide into deeper water, where she could have anchored, and where she would have been in comparative safety so long as moderate weather prevailed, unless, owing to her leaking and helpless condition, she became water-logged. The Daring was returning to Gray's Harbor after having towed two vessels out to the open sea, and was about three miles distant when the accident occurred. She promptly responded to the signals of distress that were given, and towed the disabled vessel five or six miles around the jetty to a safe position inside the harbor, where she was left that night, resting upon a sand bottom, and the following day, with assistance of two small tugs, towed her to Aberdeen, where she remained until repairs were made. The time consumed in getting the towline from the Daring to the South Bay and towing from the place where the accident occurred to the beach where the schooner was left overnight was four or five hours, and she was docked at Aberdeen at about 3 o'clock p. m. on the next day after the accident. The value of the Daring is about $65,000. She is a new and powerful tugboat, and completely equipped for service as a towing vessel. The rescue of the South Bay was accomplished with commendable promptness and skill, but without exposure to extraordinary peril or the endurance of special hardships. The value of the South Bay in her damaged condition and her cargo was proximately $50,000. She was in a situation of actual peril, but not in imminent danger of destruction, as she probably would have remained afloat until relieved by another steamer if the Daring had not come to her relief immediately.

In consideration of the facts above stated, it is the opinion of the court that a meritorious salvage service was rendered, for which the libelants are entitled to a reasonable reward. The value of the property salved is to be considered in judging the merits of the service to be rewarded, but maritime law does not arbitrarily require that one-third of the value must be given to the salvors, nor fix any maximum or minimum percentage which they may claim. The policy of the law is to encourage valor in the rescuing of vessels and property imperiled by awarding to salvors a fair share of the value of what they save, and each case must be judged with reference to its peculiar facts. I consider that in this case 4 per cent. will be a reasonably liberal reward, and I therefore direct that a decree be entered in favor of the libelants for the following sums:

| | |
|---|---:|
| To the Gray's Harbor Tugboat Company, owner of the Daring | $1,200 |
| To A. T. Stream, her master | 300 |
| To George Benkinshaw, engineer, and T. W. Stream, mate, each $100 | 200 |
| To John Ady, Wm. Boyce, Lock Sing, Fred Scott, Paul Webke, and Peter Gomis, members of the crew, each $50 | 300 |
| Amounting, in the aggregate to | $2,000 |

—and costs, and interest at the rate of 6 per cent. per annum from the date of the decree.